UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHRISTOPHER MEADOWS,

                Plaintiff,

-against-

THE CITY OF NEW YORK

                Defendant.
------------------------------------------------------------------X

**COMPLAINT**

**ECF CASE**

**JURY TRIAL DEMANDED**

Plaintiff CHRISTOPHER MEADOWS ("plaintiff" or "Mr. Meadows") by and through his attorneys, COHEN & FITCH LLP, alleges against Defendant THE CITY OF NEW YORK as follows:

## NATURE OF THE ACTION

1. This is an action seeking monetary relief (including past and ongoing economic loss), compensatory and punitive damages, disbursements, costs, fees, and other damages for violations of plaintiffs' rights brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), New York Executive Law § 296, the New York State Human Rights Law, Executive Law § 290 *et seq.* ("Human Rights Law" or "NYSHRL"); and the Administrative Code of the City of New York § 8-101 *et seq.* ("City Law" or "NYCHRL"), intentional infliction of emotional distress, and negligent infliction of emotional distress.

2. Plaintiff alleges that he was subjected to discrimination, denied the equal terms, conditions, and privileges of employment, subjected to a hostile work

environment, and/or retaliated against on account of his sex, gender, and/or sexual orientation by defendant The City of New York and/or its agents, servants, employees, and/or licensees.

3. Plaintiff alleges that defendant The City of New York and/or its agents, servants, employees, and/or licensees intentionally and purposefully discriminated against him based on his sex, gender, and/or sexual orientation and/or failed to prevent same from occurring and that said defendant inflicted emotional distress upon plaintiff, intentionally, and/or negligently.

4. Plaintiff further alleges that the discrimination was intentional and was the substantial and/or motivating factor in interfering with plaintiff's employment.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1334, because this is an action arising under the laws of the United States, specifically Title VII.

6. This Court is requested to exercise pendent jurisdiction with respect to plaintiffs' New York State and New York City law claims pursuant to 28 U.S.C. § 1367.

7. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b) and 1391(c) and because this is the place where the unlawful employment practices occurred.

## DEMAND FOR TRIAL BY JURY

8. Plaintiff demands a trial by jury.

## PROCEDURAL REQUIREMENTS

9. On October 19, 2022, the Equal Employment Opportunity Commission

issued a Notice of Right to Sue to plaintiff. Plaintiff filed this Complaint within ninety (90) days of when he received said Notice.

10. Plaintiff will serve a copy of the complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York upon filing in accordance with N.Y.C. Admin. Code § 8-502(c).[1]

## PARTIES

### *Plaintiff*

11. Mr. Meadows is a thirty-nine (39) year-old, gay, African-American man who is currently a resident of the State and City of New York.

12. At all times relevant to this complaint, Mr. Meadows was employed by The City of New York, New York, New York City Housing Authority ("NYCHA"). His position was "Caretaker J" and he was assigned to the Pelham Parkway Houses. Mr. Meadows's job includes, among other things, maintaining the premises, cleaning, and taking out the trash. During his time with NYCHA, Mr. Meadows has had an exemplary performance record.

13. Mr. Meadows was at all times an "individual" within the meaning of the Human Rights Law, protected from discrimination on the basis of sex, gender, and/or sexual orientation.

14. Mr. Meadows was at all times a "person" within the meaning of the City Law, protected from discrimination on the basis of sex, gender, and/or sexual orientation.

---

[1] Since this action is brought against the CITY OF NEW YORK, the CITY OF NEW YORK will be served with this Complaint in connection with plaintiffs' obligations under F.R.C.P. 4, which will also satisfy plaintiffs' obligations under N.Y.C. Admin. Code § 8-502(c).

*Defendants*

15. Defendant, THE CITY OF NEW YORK, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

16. Defendant, THE CITY OF NEW YORK, maintains the New York City Housing Authority ("NYCHA"), a duly authorized public authority and the largest public housing authority in North America, which provides housing for New Yorkers, and is authorized to perform all functions of a housing department, acting under the direction and supervision of the aforementioned municipal corporation, The City of New York.

17. That at all times hereinafter mentioned the individually named supervisory personnel, were duly sworn employees of NYCHA and were acting under the supervision of said department and according to their official duties.

18. That at all times hereinafter mentioned the supervisors, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, policies, and/or practices of the State or City of New York.

19. That at all times hereinafter mentioned the NYCHA supervisors, were responsible for supervising plaintiff during his employment with NYCHA and further tasked with ensuring the defendant City of New York's compliance with state and local anti-discrimination laws and ensuring that other NYCHA employees were not violating these anti-discrimination ordinances.

20. Each and all of the acts and/or omissions of the NYCHA supervisors and/or NYCHA employees alleged herein were done by said individuals while acting

within the scope of their employment by defendant THE CITY OF NEW YORK.

21. Each and all of the acts of the NYCHA supervisors and/or NYCHA employees alleged herein were done by said individuals while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

22. At all relevant times, defendant THE CITY OF NEW YORK controlled the terms and conditions of plaintiffs' employment and was and is an "employer" within the meaning of the NYSHRL, NYCHRL, and the aforementioned Federal Laws.

23. At all relevant times, defendant The City of New York employed more than one hundred (100) employees.

24. At all times hereinafter mentioned, the individually named NYCHA supervisors and/or NYCHA employees were employees of defendant The City of New York and were acting under the supervision of defendant The City of New York and according to their official duties.

25. Each and all of the acts of the individually named NYCHA employees alleged herein were done by said individuals while acting within the scope of their employment by defendant The City of New York.

26. Each and all of the acts of the individually named NYCHA employees alleged herein were done by said individuals while acting in furtherance of their employment by defendant The City of New York.

27. At all relevant times, defendant the City of New York controlled the terms and conditions of plaintiff's employment and is an "employer" within the meaning of Title VII, the NYSHRL, and the NYCHRL.

**FACTUAL ALLEGATIONS**

28. Christopher Meadows is a thirty-nine (39) year-old, gay, African-American man, who has been employed by the City of New York, New York City Housing Authority since August of 2021.

29. At all times relevant, Mr. Meadow's position was "Caretaker J" and he was assigned to the Pelham Parkway Houses. Mr. Meadows's job includes, among other things, maintaining the premises, cleaning, and taking out the trash. During his time with NYCHA, Mr. Meadows has had an exemplary performance record.

30. Mr. Meadows was hired by NYCHA in August of 2021 and is still currently employed by NYCHA. At the time of his hiring, he was employed as a temporary seasonal worker and was assigned to a floating position, wherein NYCHA would send him to different locations for work. However, upon information and belief, on account of his outstanding work performance, on or about December 21, 2021, Mr. Meadows was notified that his position was going to be made permanent and that he would be assigned to a permanent location.

31. Thereafter, Mr. Meadows was assigned to be a Caretaker at Fort Independence in the Bronx. During his time at Fort Independence, he did not have any issues with any other employees or co-workers. Nevertheless, at the beginning of January 2022, Mr. Meadows was notified that he was being transferred to a new permanent location at the Pelham Parkway Houses.

32. Subsequently, on or about January 22, 2022, Mr. Meadows reported to work at the Pelham Parkway Houses. During the first few weeks, Mr. Meadows was at this location, he did not have any issues with other employees.

33. However, on or about February 10, 2022, this all changed, when Mr. Meadows's co-workers began an unlawful campaign of harassment towards Mr. Meadows because he is a gay man. Moreover, upon reporting same to his supervisors, Mr. Meadows was met with indifference.

34. On or about February 10, 2022, while Mr. Meadows was at work at the Pelham Parkway Houses, in the vicinity of 2215 Bronxwood Ave., one of his co-workers, upon information and belief, Will Depugh (Id. No. 64404), started harassing Mr. Meadows. Specifically, Mr. Depugh, aggressively approached Mr. Meadows, a black, gay man, and asked Mr. Meadows, in sum and substance whether he was "one of those dick-sucking niggas?" and "whether he sucked dick."

35. Mr. Meadows was shocked and upset by this derogatory, anti-gay statement and tried to disengage from the situation by telling Mr. Depugh it was none of his business. However, Mr. Depugh continued to taunt Mr. Meadows on account of his sex, gender, and/or sexual orientation, by stating, in sum and substance, "me and the other guys want to know if you get down like that," and told Mr. Meadows in sum and substance that he couldn't be around because Mr. Depugh and the other caretakers wanted to work with "real men." Upon hearing this, Mr. Meadows became embarrassed, began to cry, and felt physically sick.

36. Likewise, Mr. Meadows went to his supervisor, whose name, upon information and belief, is Mr. Garcia, and told him that he wanted to go home because he felt sick. At this time, Mr. Meadows wanted to report the incident but was too embarrassed, sick, and scared do to so. As such, Mr. Meadows took the rest of the day off and went home. However, the very next day, February 11, 2022, when Mr. Meadows

returned to work, he decided that he needed to make a report about the anti-gay comments made towards him by Mr. Depugh.

38. Accordingly, on or about February 11, 2022, Mr. Meadows approached the Superintendent of the building, upon information and belief, Mr. Alderman, and attempted to make a report about the harassment which he was the victim of on account of his sex, gender, and/or sexual orientation as it was clear that Mr. Depugh would not have made these comments towards him if he was a woman who liked to date men or if he was a man that liked to date woman. However, when Mr. Meadows approached Mr. Alderman and attempted to report what had occurred, Mr. Alderman, blew Mr. Meadows off and told him, in sum and substance, that it was too late in the day for a report to be made and that Mr. Meadows would need to make the report on Monday.

38. Thereafter, on or about Monday, February 14, 2022, upon reporting to work, Mr. Meadows went to Mr. Alderman's office and filed a report with him, and the supervisor of caretakers, upon information and belief, Myra LNU (last name is currently unknown). After filing the report, Mr. Meadows was advised by Mr. Alderman and Myra that someone from the Safety and Security Office would reach out to him soon.

39. However, two (2) days elapsed and Mr. Meadows still had not heard anything, so on or about February 16, 2022, he called the Safety and Security Office himself. However, during this call, Mr. Meadows was advised by the Safety and Security Office that they were not prepared to speak with him and that they would call him back.

40. Subsequently, the harassment of Mr. Meadows continued, when on or about or between February 15, 2022, and February 17, 2022, Mr. Depugh, and another one of Mr. Meadows's co-workers, Walker LNU (last name is currently unknown),

8

continued to harass Mr. Meadows on account of his sex, gender, and/or sexual orientation.

41. Specifically, on several different occasions over these three (3) days, Mr. Depugh and Walker made a variety of unlawful anti-gay comments towards Mr. Meadows, including, but not limited to, telling Mr. Meadows that he made them feel uncomfortable in the men's employee locker room despite the fact Mr. Meadows had not done anything to make them feel uncomfortable aside from the fact he was gay. In addition, Mr. Depugh and Walker told Mr. Meadows, in sum and substance, that he shouldn't come into the men's employee locker room because they were "real men" and they didn't want him to "look at them," and asked Mr. Meadows, in sum and substance, "why he didn't feel more comfortable using the female employee locker room?"

42. Following these incidents, on or about February 17, 2022, Mr. Meadows again went to speak to his supervisor, Mr. Garcia, about the ongoing harassment. At this time, Mr. Garcia advised Mr. Meadows that he was going to take care of the situation and file another report. However, upon information and belief, no additional reports were filed by Mr. Garcia or any other supervisor despite Mr. Meadows's numerous complaints.

43. Thereafter, between February 21, 2022, and February 25, 2022, Mr. Meadows was out on family leave in connection with the death of his father. Mr. Meadows returned to work on February 28, 2022. That very day, February 28, 2022, a birthday party was being held for a co-worker, Fatima LNU (last name unknown), and Mr. Meadows and the other employees got together to celebrate Fatima's birthday.

44. During the birthday celebration, Fatima bought Mr. Meadows juice. Several minutes later, as Mr. Meadows stood in the break room holding his juice, he was

approached by Walker, who began to taunt him and then physically assaulted Mr. Meadows by grabbing the juice from his hand, saying it was garbage, and attempting to throw out same. Mr. Meadows immediately responded by telling Walker that he was not finished with the juice but Walker continued to harass him and taunt him in front of other employees.

45. Subsequently, Walker approached Fatima and said something to her, and a little while later, Fatima informed Mr. Meadows that Walker had called come up to her and called him a "faggot" and asked her, in sum and substance, why she was buying "this faggot" a juice when it was her birthday.

46. Subsequently, on or about March 3, 2022, Mr. Meadows was finally contacted by the Safety and Security Office, who advised him there was nothing they could do for him as it was outside of the scope of things they investigate.[2] In addition, on this same date, Walker again approached Mr. Meadows, while they were on a break, tried to speak with him, and asked him, in sum and substance, whether he was making Mr. Meadows uncomfortable.

47. It was clear from these events, that defendant the City of New York tolerated and even encouraged an anti-homosexual environment in the workplace, and that the hostile workplace Mr. Meadows was subject to was motivated by the fact that he was a gay man.

---

[2] Mr. Meadows was advised by the Safety and Security Office he could file an internal EEO complaint. Plaintiff contacted the EEO and reported his concerns. However, as of the date of this filing, plaintiff has not received a response from the EEO.

48. In addition, the foregoing incidents have caused Mr. Meadows embarrassment, humiliation, emotional stress, and mental anguish in his professional and personal life causing permanent emotional damages.

49. Defendant, through its employees, has engaged in unlawful discriminatory and abusive practices against plaintiff because of his sex, gender, and/or sexual orientation, in violation of Federal, State, and City statutes.

50. As a result of the forgoing suffered severe emotional damages, including compensatory damages, punitive damages, costs, and attorneys' fees.

## FIRST CLAIM FOR RELIEF UNDER FEDERAL LAW
## VIOLATIONS OF TITLE VII, 42 U.S.C. § 2000e
## SEX/GENDER/SEXUAL ORIENTATION DISCRIMINATION

51. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

52. Defendant THE CITY OF NEW YORK (through its employees, as outlined *supra*) discriminated against plaintiff based on plaintiff's sex, gender, and/or sexual orientation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

53. Plaintiff is a gay male. As such, he belongs to a protected class.

54. As alleged herein, plaintiff was subjected to disparate treatment in the form of threats, harassment, and/or intimidation by defendant THE CITY OF NEW YORK, its agents, and/or employees.

55. Defendant THE CITY OF NEW YORK, through its employees and/or agents, subjected plaintiff to a hostile work environment by failing and/or refusing to provide a safe environment and to employ procedures to prevent and deal with the

discriminatory, disparate, and abusive threats, harassment, and intimidation by its employees and/or agents.

56. By engaging in the foregoing conduct, defendants' employees, and therefore, defendant THE CITY OF NEW YORK has violated plaintiff's rights under Title VII in that plaintiff was disparately treated based on his sex, gender, and/or sexual orientation.

57. As a consequence of the aforementioned wrongful actions, intentional, negligent, and reckless behavior, and violations of Federal, State, and City laws, plaintiff was subjected to fear, personal humiliation, and degradation, and suffered and continues to suffer from mental and emotional distress.

58. Plaintiff suffered and continues to suffer irreparable injury and monetary damages, as well as punitive damages, costs and attorneys' fees, and other relief this Court may find just and proper.

59. Defendant THE CITY OF NEW YORK, through its employees, acted intentionally, with malice, or with reckless disregard for plaintiffs' rights, proximately causing plaintiffs' mental anguish, pain and suffering, and emotional distress, thereby entitling plaintiffs to an award of compensatory and punitive damages and an award of reasonable attorney's fees.

**SECOND CLAIM FOR RELIEF UNDER FEDERAL LAW**
**VIOLATIONS OF TITLE VII, 42 U.S.C. § 2000e**
**HOSTILE WORK ENVIRONMENT**

60. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

61. By engaging in the foregoing conduct, defendant THE CITY OF NEW

YORK (through its employees and/or agents) has violated rights guaranteed to the plaintiffs under Title VII in that plaintiff was, *inter alia*, harassed and subjected to a hostile work environment on the basis of his sex, gender, and/or sexual orientation, as more fully detailed above.

62. Defendant THE CITY OF NEW YORK, through its employees, acted intentionally, with malice or with reckless disregard for plaintiff's rights, proximately causing plaintiff's mental anguish, pain and suffering, and emotional distress, thereby entitling plaintiff to an award of compensatory and punitive damages and an award of reasonable attorney's fees.

## NEW YORK STATE & CITY CLAIMS

### THIRD CAUSE OF ACTION
*(Gender/Sex-Based Sexual Orientation Discrimination in Violation of the NYCHRL)*

63. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

64. The NYCHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's sexual orientation.

65. Plaintiff is an "employee" within the meaning of the NYCHRL, and Defendant THE CITY OF NEW YORK is an "employer" under the NYCHRL.

66. Discriminatory comments regarding plaintiff's sexual orientation were made to plaintiff by defendant THE CITY OF NEW YORK's employees and/or agents as further outlined *supra*.

67. Thereafter, defendant THE CITY OF NEW YORK's employees and/or agents refused to rectify the hostile environment following plaintiff's complaints about same.

68. Moreover, these discriminatory comments to plaintiff about his sexual orientation and NYCHA employees' lack of action to rectify same, indicates that a pervasive anti-homosexual culture exists at NYCHA which is tolerated by defendant THE CITY OF NEW YORK.

69. By engaging in the foregoing conduct, defendant THE CITY OF NEW YORK has violated plaintiff's rights under the NYCHRL in that plaintiff was disparately treated based on his sex, gender, and/or sexual orientation.

70. By their actions, defendant employer THE CITY OF NEW YORK, and its employees and/or agents discriminated against plaintiff with respect to harassment, hostile environment, and other terms and conditions of employment, because of his sex, gender, and/or sexual orientation, in violation of the NYCHRL.

71. Defendant THE CITY OF NEW YORK acted intentionally with malice or with reckless disregard for plaintiff's rights, proximately causing plaintiff mental anguish, pain and suffering, emotional distress, and the loss of income and other related benefits, thereby entitling plaintiff to an award of compensatory damages.

72. As a direct and proximate result of defendant THE CITY OF NEW YORK's discriminatory conduct, plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

**FOURTH CAUSE OF ACTION**
(*Gender/Sex-Based Sexual Orientation Discrimination in Violation of the NYSHRL*)

73. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

74. The NYSHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's sexual orientation.

75. Plaintiff is an "employee" within the meaning of the NYSHRL, and Defendant THE CITY OF NEW YORK is an "employer" under the NYSHRL.

76. Discriminatory comments regarding plaintiff's sexual orientation were made to plaintiff by defendant THE CITY OF NEW YORK's employees and/or agents as further outlined *supra*.

77. Thereafter, defendant THE CITY OF NEW YORK's employees and/or agents refused to rectify the hostile environment following plaintiff's complaints about same.

78. Moreover, these discriminatory comments to plaintiff about his sexual orientation and NYCHA employees' lack of action to rectify same, indicates that a pervasive anti-homosexual culture exists at NYCHA which is tolerated by defendant THE CITY OF NEW YORK.

79. By engaging in the foregoing conduct, defendant THE CITY OF NEW YORK has violated plaintiff's rights under the NYSHRL in that plaintiff was disparately treated based on his sex, gender, and/or sexual orientation.

80. By their actions, defendant employer THE CITY OF NEW YORK, and its employees and/or agents discriminated against plaintiff with respect to harassment, hostile environment, and other terms and conditions of employment, because of his sex,

gender, and/or sexual orientation, in violation of the NYSHRL.

81. Defendant THE CITY OF NEW YORK acted intentionally with malice or with reckless disregard for plaintiff's rights, proximately causing plaintiff mental anguish, pain and suffering, emotional distress, and the loss of income and other related benefits, thereby entitling plaintiff to an award of compensatory damages.

82. As a direct and proximate result of defendant THE CITY OF NEW YORK's discriminatory conduct, plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

83. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

84. Defendant THE CITY OF NEW YORK's discriminatory treatment of plaintiff, through its agents and/or employees, was intentional, reckless, extreme and outrageous, and caused plaintiff to suffer severe emotional distress.

85. The emotional harm was exacerbated by defendant THE CITY OF NEW YORK's employees who threatened, harassed, and abused plaintiff, and by defendant THE CITY OF NEW YORK's inaction concerning rectifying the hostile work environment plaintiff was being subjected to.

86. The acts of defendant THE CITY OF NEW YORK's employees and/or agents were intentionally directed at plaintiff.

87. The conduct of defendant THE CITY OF NEW YORK's employees and/or agents were extreme, outrageous, malicious, and dangerous to the physical, mental and emotional well-being of plaintiff, beyond the standards of civilized decency, and utterly intolerable in a civilized society.

88. Defendant THE CITY OF NEW YORK's employees and/or agents knew and intended that this conduct would cause severe and extreme emotional harm to plaintiff.

89. As a consequence of defendant THE CITY OF NEW YORK's employees and/or agents' intentional wrongful actions, plaintiff was subjected to fear, personal humiliation and degradation, and suffered and continues to suffer mental and emotional distress.

90. Plaintiff suffered and continues to suffer irreparable injury and monetary damages, as well as punitive damages, costs and attorneys' fees, and any other relief this Court may find just and proper.

## SIXTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

91. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

92. Defendant THE CITY OF NEW YORK had a duty to protect plaintiff, their employee, from emotional harm.

93. Defendant CITY OF NEW YORK breached this duty and negligently permitted plaintiff to be injured.

94. Plaintiff's emotional harm was exacerbated by supervisors, who refused to do anything to prevent a hostile work environment.

95. The conduct of defendant THE CITY OF NEW YORK's employees and/or agents was extreme, outrageous, malicious, and dangerous to the physical, mental, and emotional well-being of plaintiff.

96. As a consequence of defendant THE CITY OF NEW YORK's employees and/or agents' wrongful actions, plaintiff was subjected to fear, personal humiliation and degradation, and suffered and continues to suffer mental and emotional distress.

97. Plaintiff suffered and continues to suffer irreparable injury and monetary damages, as well as punitive damages, costs and attorneys' fees, and any other relief this Court may find just and proper.

**SEVENTH CAUSE OF ACTION**
**NEGLIGENT HIRING/TRAINING/SUPERVISION/RETENTION**

98. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

99. Defendant CITY OF NEW YORK selected, hired, trained, retained, assigned, and supervised all members of NYCHA, including the employees and/or agents individually named above.

100. Defendant CITY OF NEW YORK was negligent and careless when it selected, hired, trained, retained, assigned, and supervised all members of NYCHA, including the employees and/or agents individually named above.

101. Due to the negligence of the defendant CITY OF NEW YORK as set forth above, plaintiff suffered pain, and trauma, together with embarrassment and humiliation, and emotional distress.

102. As a result of the foregoing, plaintiff is entitled to compensatory damages and is further entitled to punitive damages against the individual defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff respectfully requests the following relief jointly and severally against all of the defendants:

a. compensatory damages at an amount to be set a trial;

b. punitive damages;

c. reasonable attorneys' fees, costs, and disbursements incurred in this action; and

d. any other relief that the Court deems just and proper.

Dated: New York, New York
October 28, 2022

                                            Respectfully submitted,

                                            **COHEN & FITCH LLP**

                          By: _____
                               Gerald Cohen
                               Joshua Fitch
                               Ilyssa Fuchs
                               *Attorneys for Plaintiff*
                               110 E. 59th St., Suite 3200
                               New York, New York 10022
                               Phone: (212) 374-9115
                               Fax: (332) 777-2172